UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MICHAEL NEGERSMITH,                          :
                    Plaintiff,                          :
                               :          **<u>OPINION AND ORDER</u>**
v.                                                   :
                               :          22 CV 10241 (VB)
UNITED STATES OF AMERICA,                     :
                  Defendant.                       :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Michael Negersmith brings this personal injury action against the United States

pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. ("FTCA"), for injuries

allegedly sustained when he was struck by a United States Postal Service ("USPS") vehicle

while riding his motorcycle.  Prior to bringing this lawsuit, plaintiff filed an administrative claim

with the USPS for $502,500.  Approximately sixteen months later, having not received a

response from the USPS, plaintiff filed the instant action in which he seeks to recover

$5,000,000.

      Now pending is plaintiff's motion for leave to seek money damages in excess of the

amount of the claim presented to the USPS, pursuant to 28 U.S.C. § 2675(b).  (Docs. ##43, 45).

      For the reasons set forth below, the motion is DENIED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      The parties have submitted memoranda of law and supporting declarations and exhibits.

Together, they reflect the following factual background.

I.    <u>Injury and Initial Medical Treatment</u>

      On May 27, 2021, a USPS vehicle struck the motorcycle plaintiff was riding in East

Fishkill, New York.  As a result, plaintiff fell off the motorcycle and lost consciousness.

Paramedics found plaintiff to be disoriented and transported him by ambulance to Vassar Brothers Medical Center. There, he was diagnosed with a number of head injuries, including a "brain concussion" and "closed head injury with concussion," as well as several fractures and dislocated bones. (Doc. #45-15 at ECF 20–21).[1]

On June 2, 2021, plaintiff met with Lawrence Kusior, M.D., an orthopedic surgeon, regarding pain in his shoulder and a fractured thumb. Dr. Kusior's notes do not mention head pain or brain trauma. On July 2, 2021, plaintiff was treated at the emergency room at Putnam Hospital for severe shoulder and neck pain. The documentation does not reflect any complaint of head injury.

II.    Administrative Claim

On July 28, 2021, plaintiff was evaluated by Dr. Lydia Shajenko, a board-certified psychiatrist and neurologist of the Brain Institute of Northern New Jersey. Dr. Shajenko assessed plaintiff with: (i) TBI, with "amnesia retrograde and anterograde"; (ii) cerebral concussion and post-concussive syndrome; (iii) severe memory lapses; (iv) headaches; (v) dizziness; (vi) altered mental status; and (vii) paranoia, among other things. (Doc. #45-19 at ECF 7). Dr. Shajenko noted that plaintiff's symptoms could be related to "epileptic seizures" (id. at ECF 3), and ordered an electroencephalogram ("EEG") and brain magnetic resonance imaging ("MRI"), as well as other scans of his spine and extremities.

That same day, plaintiff filed an administrative claim against the USPS using the government's prescribed Standard Form 95 ("SF-95"). (Doc. #45-4). Plaintiff sought $500,000 for personal injury and $2,500 for property damage to his motorcycle, for a total of $502,500. In

---

[1]    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

describing the nature and extent of his injuries, plaintiff said he "sustained a head injury, traumatic brain injury [("TBI")], multiple fractured ribs, dislocated left shoulder, fractured left thumb, neck injury, [and] road rash." (Id. at ECF 1).

III.    Medical Treatment After Administrative Claim

In late September and early October 2021, plaintiff underwent additional diagnostic imaging, including MRIs and a video-EEG test. On October 13, plaintiff had a follow-up appointment with Dr. Shajenko. After reviewing plaintiff's MRI and EEG results, Dr. Shajenko recommended that plaintiff consult with a neuropsychologist and receive cognitive behavioral therapy. She also prescribed a series of medications, including an anticonvulsant and a medication used to treat Alzheimer's Disease.

On November 15, 2021, plaintiff met with Dr. Joseph Farmer, a new primary care physician in North Carolina, where plaintiff had recently relocated. Dr. Farmer's notes show plaintiff complained of stuttering and feeling "foggy headed." (Doc. #45-21 at ECF 5). Plaintiff told Dr. Farmer that he had "been seeing neurology who tells him he has 'white spots' in his brain and that he is having seizures," but he "has never noticed any seizure like activity. (Id.). Plaintiff also reported that the anticonvulsant medication he was taking "makes him feel terrible," and asked for a referral to a local neurologist. (Id.). Dr. Farmer's records indicate plaintiff had a seizure disorder, and that plaintiff was stuttering during the exam.

On February 24, 2022, plaintiff sent the USPS a letter requesting it either take action to settle the claim or deny it so plaintiff could proceed with litigation. (Doc. #45-8).

On March 24, 2022, plaintiff began treating with Dr. William H. Boles, a neurologist in North Carolina. Dr. Boles noted plaintiff had been having "episodes with confusion, headache, memory loss, paranoia," and diagnosed him with "traumatic brain injury, seizure like activity," and "adjustment disorder." (Doc. #45-22 at ECF 7–8). On May 11, 2022, plaintiff met again

with Dr. Farmer, who treated him for both seizure disorder and depressive disorder.  After a June 10, 2022, meeting, Dr. Farmer characterized plaintiff's depressive disorder as major depressive disorder.

On June 24, 2022, plaintiff submitted an application for social security disability insurance benefits, in which he stated he is "unable to work because of my disabling condition." (Doc. #45-29).  The Social Security Administration found plaintiff became disabled on May 27, 2021, and was entitled to disability benefits as of November 2021.

Plaintiff commenced this action on December 2, 2022, seeking $5,000,000 in damages. The instant motion was filed on October 14, 2024.

## DISCUSSION

I.    <u>Legal Standard</u>

"The United States, as sovereign, is immune from suit unless it waives immunity and consents to be sued."  <u>Cooke v. United States</u>, 918 F.3d 77, 81 (2d Cir. 2019).[2]  "A waiver of sovereign immunity by the United States 'must be unequivocally expressed in the statutory text,' and 'strictly construed, in terms of its scope, in the sovereign's favor.'"  <u>Collins v. United States</u>, 996 F.3d 102, 109 (2d Cir. 2021) (quoting <u>Dep't of the Army v. Blue Fox, Inc.</u>, 525 U.S. 255, 261 (1999)).

In the FTCA, Congress explicitly waived sovereign immunity for tort claims, stating the United States "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  However, a plaintiff may not bring a personal injury action for money damages against the United States "caused by the negligent or

---

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate federal agency" for its review, and the agency has either denied the claim or not ruled on it for six months.  Id. § 2675(a).  A plaintiff must present the claim to the agency within two years after the underlying tort claim accrues, and the claim can be amended at any time prior to when the agency acts on it or prior to filing suit.  Id. § 2401(b); 28 C.F.R. § 14.2(c); 39 C.F.R. § 912.5(b).

The amount claimed in the lawsuit may not exceed the amount of the claim presented to the federal agency, "except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim."  28 U.S.C. § 2675(b).  The plaintiff bears the burden of demonstrating that one of these exceptions applies. Malmberg v. United States, 816 F.3d 185, 196 (2d Cir. 2016).  To do so, a plaintiff must make a showing that "the original claim was calculated on the basis of known facts at the time of the filing and that, subsequently, some new and previously unforeseen information came to light." O'Rourke v. Eastern Air Lines, Inc., 730 F.2d 842, 856 (2d Cir. 1984).  Courts thus often examine whether the increased amount sought was "foreseeable" at the time of the original claim.  See, e.g., Malmberg v. United States, 816 F.3d at 197.

II.    Analysis

Plaintiff argues he should be able to recover damages in excess of his administrative claim because his new diagnoses and his permanent disability were unforeseeable at the time he filed the SF-95.

The Court disagrees.

Plaintiff claims he "had hardly any information available to him about the effects or extent of his TBI" when he filed his SF-95 because he had only had an initial consultation with his neurologist, Dr. Shajenko, and "had not consulted with any specialists qualified to properly diagnose or manage a TBI." (Doc. #45-1 ("Pl. Mem.") at 10). However, "newly discovered evidence means that the new developments must not have been reasonably capable of detection at the time of the initial claim." Delano v. United States, 2010 WL 3386835, at *3 (W.D.N.Y. Aug. 25, 2010). "It is not enough that the extent of the injury was not discovered or contemplated due to a lack of a more thorough examination which could not have been conducted earlier." Id. Indeed, the relevant question is whether "the newly discovered evidence must be truly unexpected and unforeseen and thus not reasonably capable of detection at the time the administrative claim was filed." Mallard v. Menifee, 2000 WL 557262, at *6 (S.D.N.Y. May 8, 2000).

Courts have denied similar motions when a plaintiff has offered evidence that a doctor, applying his or her own expertise, "offered guarded prognoses and recommended reevaluation on an ongoing basis," Stedford v. United States, 2022 WL 4074437, at *6 (E.D.N.Y. Aug. 31, 2022), or when, if the plaintiff "had simply requested the relevant medical testing before filing her claim, the results would have been the same," Li v. Aponte, 2008 WL 4308127, at *12 (S.D.N.Y. Sept. 16, 2008). In contrast, courts have granted such motions, for example, upon finding a subsequent surgery was not foreseeable because a doctor initially advised the plaintiff that physical therapy would be sufficient and surgery would not be necessary. See, e.g., Castelluccio v. United States, 2019 WL 7753277, at *4 (N.D.N.Y. Dec. 20, 2019).

Plaintiff identifies four conditions he claims were unforeseeable at the time he filed the SF-95: "seizure disorder, adjustment disorder, major depressive disorder, and a stutter."  (Pl. Mem. at 10).

First, plaintiff has not cited any evidence suggesting his seizure disorder could not have been discovered before he filed his administrative claim.  Dr. Shajenko's medical records show essentially the same relevant symptoms on July 28, 2021, the day plaintiff filed his SF-95, and when he visited again on October 13, 2021.  (Doc. #45-19 at ECF 7, 15).  Indeed, Dr. Shajenko noted in July 2021 that his symptoms could be related to "epileptic seizures" (id. at ECF 3) and recommended additional diagnostic imaging, including an MRI and EEG.  This need for additional testing demonstrates plaintiff's future diagnoses were in fact were foreseeable.

Second, plaintiff has also not cited any evidence suggesting his diagnoses of adjustment disorder and major depressive disorder were not foreseeable when he filed his administrative claim.  Dr. Shajenko noted plaintiff presented with generally the same symptoms in July 2021 that his doctors relied on in making their later diagnoses in 2022, including an altered status, anxiety, depression, and trouble sleeping.  (Compare Doc. #45-19 at ECF 2, with Doc. #45-21 at ECF 17, Doc. #45-22 at ECF 4, 7–8).  Moreover, Dr. Shajenko recommended plaintiff attend cognitive behavioral therapy as part of her treatment plan, indicating she suspected mental illness in line with plaintiff's later diagnoses.  As such, these later diagnoses are "confirmatory" or "cumulative" of his condition as of July 2021, and thus foreseeable.  Voccia v. United States, 2016 WL 2636253, at *2 (E.D.N.Y. May 6, 2016).

Third, plaintiff argues his stutter was not a reasonably foreseeable consequence of his TBI, which he claims did not start until he started taking an antiseizure medication.  However, because plaintiff's seizure disorder was foreseeable, a side effect of a medication for the seizure

disorder would also be foreseeable.  Moreover, the burden is on plaintiff to demonstrate his

injuries were unforeseeable, and he has proffered no evidence indicating the stutter was not

foreseeable.  See, e.g., Malmberg v. United States, 816 F.3d at 196.

In addition, plaintiff argues he is entitled to excess damages because he did not know he

had suffered a permanent total disability and would not be able to work again when he filed his

SF-95.  However, plaintiff has not put forward any evidence that this was unforeseeable, beyond

his own statements that he "had no concept of how serious a TBI could be" and "had no idea that

I would become permanently disabled when I filed my SF-95."  (Doc. #45-30 ¶¶ 27–28).

Moreover, although plaintiff now states in his declaration that he cannot work due to his mental

illness, he testified at his deposition that he could not return to his past work as a laborer because

of his physical injuries—which the parties do not contest were fully foreseeable at the time

plaintiff filed his SF-95.

Plaintiff nevertheless argues his injuries were unforeseeable because "the diagnostic tests

and evaluations had not been performed before Plaintiff filed his SF-95" and he therefore "could

not have known what his healthcare providers could not tell him."  (Pl. Mem. at 13).  But this

misses the point.  Plaintiff was under no obligation to file his SF-95 when he did, and instead

should have completed his due diligence in order to properly assess his damages and provide

notice to the government of the extent of his claim.  Indeed, one reason a claimant must set forth

a specific dollar amount in his or her SF-95 is to "give the government adequate notice of the

extent of the claimant's demands."  Adams v. U.S. Dep't of Housing and Urban Dev., 807 F.2d

318, 320–21 (2d Cir. 1986).  "Sanctioning [plaintiff's] decision to prematurely file [his]

complaint would invite plaintiffs to race to file their administrative claims without conducting

any due diligence into the extent of their injury, precisely the result that section 2675(b) sought to avoid." Li v. Aponte, 2008 WL 4308127, at *12.

Moreover, the statute of limitations for filing an administrative claim is two years. 28 U.S.C. § 2401(b). Plaintiff thus had until May 27, 2023, to file his administrative claim, and had ample time to "undergo updated diagnostic tests, and ascertain his economic damages prior to filing [his] administrative claim." Delano v. United States, 2010 WL 3386835, at *4. Plaintiff limited his claim himself by filing a SF-95 in July 2021, and by not filing an amended SF-95 at any point before bringing this action. Indeed, plaintiff wrote to the USPS asking it to rule on his SF-95 in February 2022—after he had been diagnosed with seizure disorder and prescribed an anti-convulsant medication—but did not provide any increased demand for his claim.

Because no new evidence or intervening facts appeared after plaintiff filed his administrative claim, plaintiff has not satisfied the statutory requirements necessary to seek damages "in excess of the amount of the claim presented to the federal agency." 28 U.S.C. § 2675(b).

**CONCLUSION**

The motion is DENIED.

The Court will conduct a case management conference on **February 20, 2025, at 2:30 p.m.**, to be held at the White Plains courthouse, Courtroom 620, at which time counsel shall be prepared to discuss, among other things, the status of discovery and settlement discussions.

The Clerk is instructed to terminate the motion.  (Docs. ##43, 45).

Dated: February 3, 2025
      White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge